DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a summary judgment granted by the Lucas County Court of Common Pleas, in a case involving appellant's claims for injuries and damages allegedly sustained as a result of her removal from a bar after an altercation was begun by other patrons. Because we conclude that summary judgment was properly granted in favor of appellees, we affirm.
 {¶ 2} Appellant, Joyce A. Shadler, filed suit against appellees, Double D. Ventures, Inc., Lee Price, and a third unknown person. The suit stemmed from a fight incident which occurred at Johnny D's, a bar owned and operated by Double D. Ventures. Shadler claimed that she sustained injuries, including a broken ankle, in that incident. Both parties filed motions for summary judgment. Deposition testimony provided the following relevant facts.
 {¶ 3} On the evening of October 15, 2000, Shadler and her sister arrived at Johnny D's between 10:00 and 11:00 p.m. The women socialized and had a few alcoholic drinks. Shadler acknowledged that on the three or four prior occasions when she had been to the bar, she had never seen any fights or heated discussions and that she had enjoyed herself. She also had never noticed any problems with security. At approximately 1:30 to 1:45 a.m., a fight was started by other patrons. Shadler's sister was struck on the side of her face with a thrown beer bottle and then was attacked by a female patron. Another female patron also attacked Shadler. Shadler stated that the two women fell to the floor, each holding onto the other's hair. The woman continued to try to hit Shadler. She said that she ultimately sat on the woman, pinning her to the floor in an effort to prevent her from striking her.
 {¶ 4} Shadler said that Lee Price suddenly picked her up from the floor, pinning her arms with his own, and began to carry her out of the bar. According to Shadler, Price took a couple of steps then fell on her, causing her ankle to fold over and break. Price handed Shadler to another bouncer and told him to "get her out of here." That bouncer, according to Shadler, then took her to outside the door and "dropped" her. Shadler said that immediately after Price fell on her ankle she began to scream that she was in pain and needed a doctor. One of her friends, Stephen M.Cowell, and her sister came outside shortly thereafter, saw her swollen ankle, and took her to the emergency room.
 {¶ 5} Shadler said that the fight began "out of the blue" and there had been no arguments or other offensive interaction with anyone else to indicate any security problems in the bar. She acknowledged that she was straddling the girl who attacked her, pinning her arms down, and each was holding onto the other's hair. Shadler stated that when Price first grabbed her, she did think that it was a bar employee who had grabbed her. She denied that she flailed her legs or attempted to break free. Shadler said she was "glad it was over" when Price lifted her off of the girl and that he did not hurt her or fall as he was picking her up. She did not know exactly what caused Price to fall, but thought that he tripped on a chair or table. She said that the entire removal process took only a few seconds. Shadler also said that she was claiming injuries to her ankle only when Price fell and not from the second bouncer's actions when he placed her outside.
 {¶ 6} Lee Price testified in his deposition that he manages Johnny D's and is in charge of the bouncers and other staff. He said that on the evening in question, a fight broke out and beer bottles were being thrown through the air. He saw Shadler straddling a woman, pinning her to the floor. The two women were holding onto and pulling each other's hair. When he picked Shadler up, Price told her to let go of the other woman's hair. He said that as he started to walk away, he carried Shadler on his hip. After only a few steps, his shin struck a table or chair. Price acknowledged that he then went down, falling on Shadler. He did not recall Shadler telling him that her ankle was hurt and that he immediately told one of his bouncers to pick her up and take her outside. Shadler was then taken out the front door. Price stated that after removing another female patron out the back door, he went outside to the front, but Shadler was already gone. He said that had he known her ankle was hurt, he would still have taken her outside but would have sent someone to be with her.
 {¶ 7} Stephen M. Cowell, Shadler's friend, also gave deposition testimony. He stated he didn't know how or why the fight started. Up until the time of the fight, the bar had been peaceful with no security problems. Although Cowell did not see Shadler during the actual attack by the other woman, he did see Price lift Shadler up and begin to carry her on his hip with one arm. Cowell said that Shadler was mad and was trying to get away from Price, flailing her arms and kicking her legs somewhat. When Price fell, a couple bar stools flew out. Cowell said it appeared that Price's legs went out from under him and he fell toward the side on which he was carrying Shadler. Cowell said he located the friend that rode with him and then went outside where he found Shadler and her sister looking at the injured ankle. As soon as he realized it was swollen, he volunteered to take her to the emergency room and carried her to his car. Shadler's boyfriend came to the hospital, and Cowell remained for approximately an hour.
 {¶ 8} The trial court denied appellant's motion for summary judgment and granted summary judgment in favor of Double D. Ventures and Price on all claims.
 {¶ 9} Appellant appeals from that judgment, setting forth the following three assignments of error:
 {¶ 10} "1.) The Common Pleas Court erred in granting defendant's motion for summary judgment when genuine issue[s] of material facts exist:
 {¶ 11} "A. As to the issue of whether a battery was committed;
 {¶ 12} "B. As to the issue of whether defendant used reasonable force and means to eject plaintiff.
 {¶ 13} "2.) The Common Pleas Court erred to the prejudice of plaintiff and [sic] against the manifest weight of the evidence when it found a negligence claim is precluded as plaintiff could not state what caused defendant to fall.
 {¶ 14} "3.) The Common Pleas Court erred to the prejudice of plaintiff and [sic] against the manifest weight of the evidence when it found a negligence claim is precluded as there is no evidence a fight was foreseeable."
 {¶ 15} We review the trial court's ruling on the summary judgment motions de novo. Conley-Slowinski v. Superior Spinning
(1998), 128 Ohio App.3d 360, 363. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when the movant demonstrates: "that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party." Civ.R. 56(C);Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 617;AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, paragraph two of the syllabus. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Campbell v.Hospitality Motor Inns, Inc. (1986), 24 Ohio St.3d 54, 58.
 {¶ 16} To determine whether a genuine issue exists, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must necessarily prevail as a matter of law. Turner v. Turner (1993), 67 Ohio St.3d 337, 340. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 {¶ 17} With this standard in mind, we will now address appellant's assignments of error.
 I. {¶ 18} In her first assignment of error, appellant argues that the trial court erred in granting summary judgment because issues of fact remain as to whether a battery was committed and if the force used to remove appellant from the fight was reasonable.
 {¶ 19} A person is "subject to liability for battery when he acts intending to cause a harmful or offensive" unconsented-to contact, and "when a harmful contact results." Love v. PortClinton (1988), 37 Ohio St.3d 98, 99, citing Restatement of the Law 2d, Torts (1965) 25, Section 13. In order to be classified as a battery, the actual nature of the action must claim an overt, positive, or affirmative act on the part of the defendant. SeeHunter v. Shenango Furnace Co. (1988), 38 Ohio St.3d 235,237-238. Battery is an intentional act rather than negligence, and the use of excessive force by one privileged to use force on another may constitute battery. See Vanwinkle v. Dayton (Apr. 3, 1989), 2d Dist. No. 11115.
 {¶ 20} A commercial provider of alcohol owes a duty to its invitees to exercise reasonable care to protect them from injury caused by the intentional violent acts of other patrons who were served alcohol. See Mason v. Roberts (1973), 33 Ohio St.2d 29. The duty owed to a business invitee is one of "ordinary care to maintain the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203.
 {¶ 21} In this case, Price removed Shadler in the course of maintaining the bar premises in a reasonably safe condition. Therefore, he had a privilege to remove anyone involved in the fight. Additionally, Shadler acknowledged relief that Price had lifted her from the other woman who had attacked her because "it was over." Shadler acknowledged that the entire removal process took place over a very short time period and that the situation was chaotic, at best. She also admitted that Price did not hurt her in the removal. Nothing in the record indicates that the force used by Price was excessive or that he intended to cause harmful or offensive contact with Shadler. He was, in fact, attempting to prevent injury or harm by separating the two women.
 {¶ 22} In our view, reasonable minds would not differ in concluding that Price simply used the most expedient method available in attempting to remove Shadler from the bar. Price did not fall on Shadler because he was carrying her; rather, he fell because a table or chair obstructed his path. Even if Shadler would not have been injured if Price had not fallen, nothing indicates that Price's removal method was excessive under the circumstances. Therefore, summary judgment was properly granted as to the battery and excessive force claims.
 {¶ 23} Accordingly, appellant's fist assignment of error is not well-taken.
 II. {¶ 24} In her second assignment of error, appellant argues that the trial court erred in granting summary judgment as to her negligence claim when it determined that appellant had not established the reason for Price's fall which resulted in appellant's ankle being injured.
 {¶ 25} In a negligence action, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Whether a duty exists is a question of law for the court to determine. Mussivand v. David (1989),45 Ohio St.3d 314, 318.
 {¶ 26} In this case, Shadler essentially argues that regardless of what caused the fall, since it happened while Price was carrying her, it was caused by negligence. Since we have already determined that Price did not exceed his privilege in removing Shadler from the bar, she must establish some other reason for the fall which would show negligent action. The trial court determined that Shadler's negligence claim failed because she could not identify the reason Price fell. The record indicates that Price himself acknowledged that the cause was a table or bar stool hitting his shin. Shadler did not present any evidence to the contrary or show that Price's negligence somehow caused him to fall. Although the evidence shows that the fall caused the injury, Shadler has not established that Price's actions were negligent in causing the fall. Therefore, summary judgment was properly granted as to the whether Shadler established that the cause of Price's fall was negligent.
 {¶ 27} Accordingly, appellant's second assignment of error is not well-taken.
 III. {¶ 28} In her third assignment of error, appellant claims that the trial court erred in determining that the fight was not foreseeable. Essentially appellant is arguing that Johnny D's was negligent in not protecting her from a third party assault by another patron.
 {¶ 29} A business owner has no duty to protect its customers from criminal acts of third parties unless the criminal act was foreseeable, see Howard v. Rogers (1969), 19 Ohio St.2d 42, paragraphs one and three of the syllabus; Reitz v. May Co. Dept.Stores (1990), 66 Ohio App.3d 188, 191-192; Warner v.Uptown-Downtown Bar (Mar. 13, 1998), 6th Dist. No. WD-97-051, and the business owner was in possession and control of the premises, Simpson v. Big Bear Stores Co. (1995),73 Ohio St.3d 130, syllabus. A business owner is not, however, an insurer of its customers' safety. Howard, supra, at paragraph two of the syllabus; Reitz, supra, at 191. No duty to protect its patrons arises until the business owner knows or has reason to know that the acts of the third person are occurring, or are about to occur. Reitz, supra at 193; see, also, Reinemeyer v. Dar-CharCorp. (Dec. 30, 1992), 6th Dist. No. L-92-211 (bar owner not liable where incident occurred suddenly without warning and no other past incidents to give notice).
 {¶ 30} In deciding whether a criminal act was foreseeable, a court should consider the totality of the circumstances. Rietz,
supra, at 193; Warner, supra. Under the totality of the circumstances test, the court may consider evidence including the location and character of the business and the occurrence of past similar crimes. Reitz, supra, at 193, quoting Restatement of the Law 2d, Tort (1965), Section 344, Comment f. Because criminal acts are greatly unpredictable, "the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others." Id. at 193-194. As noted previously, whether or not a duty exists is a question of law for the court. Reitz, supra, at 192; Mussivand v. David
(1989), 45 Ohio St.3d 314, 318 .
 {¶ 31} In this case, while an occasional fight may have occurred previously at Johnny D's, nothing in the record indicates it had a reputation for regular outbreaks of violent behavior by its patrons. Shadler stated that she had been there several times before and had never seen any problems with violent patrons or security. In addition, she described the start of the fight as "sudden" and "out of the blue," demonstrating that no warning was provided to the bar staff that the fight was about to occur. The test for foreseeability is one of likelihood, not mere possibility. Contrary to appellant's suggestion, the simple fact that fights may occur occasionally in some bars does not indicate that a fight is imminent and foreseeable every day in every bar. Therefore, the trial court did not err in finding that the incident at Johnny D's was not foreseeable.
 {¶ 32} Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 33} The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant, pursuant to App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J. Concur.