OPINION
{¶ 1} Plaintiff-appellant, Timothy Sullivan, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Heritage Lounge ("Heritage") and 2087 PS, Inc. ("PS"). For the following reasons, we affirm.
 {¶ 2} On Friday, June 1, 2001, Sullivan and his girlfriend spent their evening socializing and playing pool at the Heritage, a 115-seat bar located in a Reynoldsburg, Ohio, strip mall. Soon after 10:00 p.m., Sullivan approached the bar to settle his tab. When Sullivan was six to eight feet from the bar, someone struck the side of his face. Prior to the blow, Sullivan did not do anything to provoke an attack and did not observe any fights or arguments. Because Sullivan did not see his assailant before he was struck, Sullivan described the blow as a "sucker punch."
 {¶ 3} As a result of this punch, Sullivan fell to the floor. As he rose, he saw a few people ushering a man out of the bar. Sullivan later learned that the man he saw being ushered out was defendant Scott Healy.[1] Earlier in the evening, Sullivan had seen Healy sitting at a table near his, but he did not notice Healy acting in an unruly or aggressive manner.
 {¶ 4} Although Healy maintained in his deposition testimony that he never struck Sullivan, Healy admitted that he was at the Heritage the night of June 1, 2001. On that Friday, Healy's evening began at 6:00 p.m., when he arrived home from work. Healy ate dinner and drank two beers. Around 8:00 p.m., Healy joined Mark Healy, his brother, and some friends at the Heritage. Immediately after getting to the bar, Healy ordered a beer and started a tab. About a half hour later, Healy went to the bar and ordered another beer. Over the course of his evening, Healy drank approximately six beers at the Heritage. Healy obtained all his drinks at the bar.
 {¶ 5} Sometime between 10:30 and 11:00 p.m., Healy heard a scuffle break out and saw two or three people on the floor, but Healy denied being a participant in the scuffle. Healy also denied that he ever hit anyone that night. Healy maintained that he left the bar without incident around 11:00 or 11:30 p.m.
 {¶ 6} Terri Metcalf was the bartender at the Heritage on June 1, 2001. During that evening, Metcalf did not see anyone staggering, stumbling, talking loud, or otherwise acting intoxicated. Additionally, nothing Metcalf saw happening in the bar that evening led her to believe that a fight might occur or that someone would be attacked.
 {¶ 7} At some point during the evening, Metcalf heard someone yell "fight," and she turned to see a scuffle occurring. Because Metcalf saw Richard South, the co-owner of the Heritage, headed toward the scuffling customers, she remained behind the bar. Metcalf later gave Sullivan a towel and saw South escorting Healy out the door.
 {¶ 8} South testified that he was standing just inside the bar area talking to an off-duty employee when he saw Healy walking toward the pool tables, the area in which Sullivan was seated. Without saying anything, Healy hit Sullivan. South began running toward Healy as soon as he saw Healy cock his arm, but South did not reach Healy in time to stop him. South immediately escorted Healy out the door and told him he was barred from returning to the Heritage.
 {¶ 9} Mark Healy, Healy's brother and a part-time employee of the Heritage, was also at the Heritage the evening of June 1, 2001. Mark did not see his brother hit anyone that night, but he did see South escorting Healy out the door. South told Mark that a fight had occurred and that Healy was being removed from the bar. When Healy tried to re-enter the bar, Mark stopped him and refused to let him enter even after Healy protested that he "didn't do anything." Mark then walked Healy to his car. Healy did not appear intoxicated to Mark at any point during the evening.
 {¶ 10} On June 20, 2002, Sullivan filed a complaint against Healy, the Heritage, and PS[2] seeking damages for the injuries caused when Healy struck him. In the complaint, Sullivan asserted against Healy a claim for assault and, in the alternative, a claim for negligence. Additionally, Sullivan asserted two negligence claims against the Heritage and PS (collectively "defendants"); one alleging that defendants negligently breached their duty to protect him and the other alleging that defendants violated R.C. 4301.22(B) by serving alcohol to an intoxicated person and, thus, were liable for negligence per se.
 {¶ 11} On October 21, 2003, defendants moved for summary judgment on both negligence claims. In a decision issued November 21, 2003, the trial court granted defendants' motion, finding that defendants presented evidence, which Sullivan did not rebut, that neither lack of security nor lack of monitoring of Healy's drinking was the proximate cause of Sullivan's injuries. The trial court then entered judgment in defendants' favor in its January 13, 2004 judgment entry. Sullivan now appeals from that judgment.
 {¶ 12} On appeal, Sullivan assigns the following error:
The trial court erred in finding that appellees, Heritage Lounge and 2087 PS, Inc., did not breach their duty to appellant, Timothy Sullivan.
 {¶ 13} Appellate review of summary judgment motions is de novo. Heltonv. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 14} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id.; Vahila v. Hall, 77 Ohio St.3d 421, 429. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support the nonmoving party's claims. Dresher, supra, at 293. If the moving party meets this initial burden, then the non-moving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. Id.
 {¶ 15} By his only assignment of error, Sullivan first argues that reasonable minds could conclude from the evidence that defendants breached their duty under R.C. 4301.22(B) to refrain from serving an intoxicated person, and as a result of that breach, Sullivan was injured. We disagree.
 {¶ 16} Where a legislative enactment imposes a specific duty for the protection of others, a person's failure to observe that duty constitutes negligence per se. Gressman v. McClain (1988), 40 Ohio St.3d 359, 362. R.C. 4301.22(B) states that "[n]o permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person." The goal of this statute is to protect a consumer of beer or intoxicating liquor from his own conduct, as well as to protect the public from such conduct. Gressman, at 362. Accordingly, a liquor permit holder who violates R.C. 4301.22(B) may be liable under a negligence per se theory to third persons for injuries caused by a person to whom the permit holder or his employees sold or furnished beer or intoxicating liquor. Id.
 {¶ 17} To recover damages in a civil action based upon a violation of R.C. 4301.22(B), a plaintiff must prove that "the permit holder or his employee knowingly sold an intoxicating beverage to a noticeably intoxicated person whose intoxication proximately caused the damages sought." Id., paragraph two of the syllabus. The liquor permit holder's knowledge of the patron's intoxication must be actual, not constructive, because otherwise, liquor permit holders would be subject to ruinous liability every time they served an intoxicating beverage. Id., at 363. A plaintiff can establish actual knowledge of intoxication through either direct or circumstantial evidence that a liquor permit holder's relation to, control over, or direction of the patron's condition was such as to give him actual personal information concerning that condition. Id. Generally, in practice, plaintiffs attempt to establish actual knowledge of intoxication through direct testimony that the patron in question acted intoxicated or expert testimony that the patron would have appeared intoxicated given the amount of alcohol consumed. See, e.g., Rockwell v.Ullom (Sep. 3, 1998), Cuyahoga App. No. 73961; Clark v. McCollum (May 28, 1993), Lucas App. No. L-92-158; Reinemeyer v. Dar-Char Corp. (Dec. 30, 1992), Lucas App. No. L-92-211.
 {¶ 18} In the case at bar, no one testified that Healy was noticeably intoxicated. To the contrary, Mark Healy testified that Healy did not
appear intoxicated. Although Metcalf did not remember serving Healy specifically that night, she did not recall seeing anyone at the bar that night who was visibly intoxicated. Sullivan himself did not remember Healy being loud, obnoxious, or aggressive — all indicators of intoxication.
 {¶ 19} Sullivan, however, argues that defendants should have known that Healy was intoxicated because Metcalf served him six beers in the approximately three hours he spent at the Heritage. In so arguing, Sullivan charges defendants with constructive knowledge of Healy's intoxication, but produces no evidence that defendants actually knew that Healy was intoxicated. Even if Healy's blood alcohol level reached .10, as Sullivan claims it did, no evidence suggests that this blood alcohol level would have caused Healy to appear intoxicated, thus tipping defendants as to his drunken state.
 {¶ 20} Although Sullivan asserts that Healy was acting in an intoxicated manner, he fails to identify any evidence supporting that assertion. None of the witnesses who were in a position to observe Healy testified that he showed any signs of intoxication. Nevertheless, Sullivan contends that Healy was visibly intoxicated and that Metcalf would have been able to observe his drunken behavior if she had not been behind the bar. The evidence does not support this contention. Healy testified that he obtained each of his beers at the bar, thus giving Metcalf an opportunity to observe his behavior throughout the evening. Therefore, Metcalf did see Healy from her position behind the bar, but she did not recall him, or anyone else she served, displaying signs of intoxication.
 {¶ 21} Accordingly, in the absence of any evidence showing that defendants had actual knowledge of Healy's intoxication, we conclude that the trial court properly granted summary judgment to defendants on Sullivan's negligence per se claim.
 {¶ 22} Second, Sullivan argues that reasonable minds could conclude from the evidence that defendants breached their duty to protect him from Healy's criminal conduct, and as a result of this breach, he was injured. We disagree.
 {¶ 23} In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142; Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Without a legal duty, no liability can arise on account of a person's negligent actions. Jeffers, supra, at 142. Whether a duty exists is a question of law for the court to determine. Mussivandv. David (1989), 45 Ohio St.3d 314, 318.
 {¶ 24} Generally, a business owner owes no duty to an injured invitee for the criminal conduct of a third person because such conduct is usually beyond reasonable expectation and a business owner is not an absolute insurer of his invitees' safety. Howard v. Rogers (1969),19 Ohio St.2d 42, 46-47; McKee v. Gilg (1994), 96 Ohio App.3d 764, 766. However, when a business owner knows or should know that there is a substantial risk of harm to his invitees from the criminal acts of third persons, the business owner owes a duty to warn or protect his invitees.Simpson v. Big Bear Stores Co. (1995), 73 Ohio St.3d 130, syllabus; Kingv. Lindsay (1993), 87 Ohio App.3d 383, 387, quoting Meyers v. RamadaInn of Columbus (1984), 14 Ohio App.3d 311, 313 (a premises owner is liable for an intentional attack by a third person when "`* * * the [owner] knew, or should have known, about the assailant's dangerous propensity and/or the [owner] knew, or should have known, that the attack upon plaintiff was imminent'"). In other words, the existence of a duty to warn or protect turns upon the foreseeability of harm to an invitee from a criminal act. Krause v. Spartan Stores, Inc., 158 Ohio App.3d 304,2004-Ohio-4365, at ¶ 7. The foreseeability of criminal acts depends upon the knowledge of the business owner. McKee, supra, at 767.
 {¶ 25} This court reviews the totality of the circumstances, including the occurrence of previous similar crimes and the specifics of the incident itself, to determine whether the criminal act was foreseeable.[3] King, supra, at 387; Meyers
at 313. Because crime is so unpredictable, the totality of the circumstances must be "somewhat overwhelming" before a court will impose a duty to warn or protect upon a business owner.Reitz v. May Co. Dept. Stores (1990),66 Ohio App.3d 188,193-194.
 {¶ 26} In the case at bar, defendants assert that violence seldom erupted at the Heritage, so they had little reason to expect it the night of the incident. Metcalf testified that she never saw any customers fight or hit each other in the two years she worked for the Heritage. Mark Healy, who visited the bar as a customer most Friday nights, testified that he had never seen any altercations or blows exchanged between customers. While South had occasionally seen customers arguing and pushing each other, he testified that he had never seen any fights or punches thrown. Finally, even Sullivan, in the multiple times he visited the Heritage, testified he had never seen a fight occur there, although he characterized the bar as "rough."
 {¶ 27} To rebut defendants' evidence, Sullivan introduced the Reynoldsburg Police Department run reports documenting police runs to the Heritage from July 1, 1998 to June 30, 2001. These run reports appear to document 32 police runs to the Heritage during the three-year period, but only five runs were in response to some sort of violence that occurred in or outside the bar.[4] Of these five runs, two were in response to a fight in the bar and three were in response to assaults. Only one of these runs — in response to a 911 call that a husband had hit his wife in the Heritage after she sought shelter from him there — resulted in arrest. The run closest in time to Healy's assault of Sullivan occurred in October 2000 — about seven months before the incident involved here.
 {¶ 28} The run reports documenting non-violent incidents include "activity codes" running the gamut from "property damage" to "suspicious car" to "drunk." The vast majority of the runs were resolved with a warning or a citation.
 {¶ 29} Based upon the run reports, the trial court concluded that defendants had a duty to protect Sullivan.[5] This conclusion, however, magnifies the predictive power of the five violent incidents. "The test for foreseeability is one of likelihood, not mere possibility. * * * [T]he simple fact that fights may occur occasionally in some bars does not indicate that a fight is imminent and foreseeable every day in every bar." Shadler v. Double D. Ventures, Inc., Lucas App. No. L-03-1278, 2004-Ohio-4802, at ¶ 31.
 {¶ 30} Furthermore, the trial court's conclusion focuses too closely on one predictor of future incidents (i.e., history of criminal activity), and too little on the entirety of the circumstances. In addition to previous criminal activity, courts employing the "totality of the circumstances" test look to the circumstances surrounding the incident itself to determine whether the business could have foreseen the incident in time to prevent it. King, supra, at 388 (considering that the assault occurred in a busy campus bar on the night of an Ohio State University-Michigan game).
 {¶ 31} Here, both Sullivan and South agree that Healy hit Sullivan suddenly and without any warning. Nothing in Healy's manner or conduct suggested that he might punch Sullivan, and nothing provoked the attack. In sum, there was nothing in Healy's actions or behavior that defendants could observe and interpret as a warning that Healy would engage in criminal behavior. Without any preceding outward sign, defendants could not foresee that violence would ensue that night.
 {¶ 32} Therefore, although the police run reports suggested that minor criminal activity was likely to occur in and around the Heritage, no evidence foreshadowed Healy's forceful, unprovoked assault on Sullivan. Taking into consideration the totality of the circumstances, we conclude that defendants could not have foreseen Healy's attack on Sullivan, and thus, defendants did not have a duty to protect Sullivan. See Shadler,
supra, at ¶ 31 (fight that occurred "out of the blue" was not foreseeable); Duncan v. BB, Inc., Lucas App. No. L-02-1131, 2002-Ohio-7302, at ¶ 25 (stabbing was unforeseen when assailants did not threaten and did nothing to alarm the victim before the assault); Smithv. Lesourdsville Lake, Inc. (July 13, 1992), Butler App. No. CA92-01-019 (defendants could not have reasonably anticipated or prevented the sudden, unprovoked attack); Roberts v. Blosser (Aug. 4, 1986), Butler App. No. CA 85-12-162 (assault was beyond that which could reasonably be foreseen because it was so sudden and unexpected).
 {¶ 33} Additionally, even if defendants had a duty to protect Sullivan, we agree with the trial court that no evidence supports the conclusion that defendants' failure to provide that protection caused Sullivan's injuries. Proximate cause is ordinarily a question of fact for the jury. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 288, quotingClinger v. Duncan (1957), 166 Ohio St. 216, 223. Nevertheless, "`where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.'" Stuller v. Price, Franklin App. No. 03AP-66, 2004-Ohio-4416, at ¶ 70, quoting Engle v. SalisburyTwp., Meigs App. No. 03CA11, 2004-Ohio-2029, at ¶ 27.
 {¶ 34} Due to the suddenness and unexpectedness of the assault, defendants could have done nothing to prevent it. The first notice of a disturbance was when Sullivan fell to the floor from the force of the blow. Thus, even the most alert security guard could not have intervened to protect Sullivan until after he was injured. Further, Sullivan himself could not identify any other actions the Heritage could have or should have done to prevent the assault. Therefore, we conclude that lack of protection was not the proximate cause of Sullivan's injuries. See Carrv. Nemer (Dec. 16, 1992), Summit App. No. 15575 (failure to provide additional security guards was not the proximate cause of plaintiff's injuries when the first indication of a problem was the actual assault).
 {¶ 35} Accordingly, we overrule Sullivan's assignment of error.
 {¶ 36} As a final note, we acknowledge precedent from Courts of Appeal of the Second, Third, Fourth, and Sixth Districts that hold that any recovery against a liquor permit holder for injuries caused by an intoxicated patron must be via a claim under R.C. 4399.18. See Aubin v.Metzger, Allen App. No. 1-03-08, 2003-Ohio-5130, at ¶ 12; Litteral v.Menagerie (Sep. 4, 1996), Lawrence App. No. 95CA33; Cummins v. Rubio
(1993), 87 Ohio App.3d 516, 521; Brown v. Hyatt-Allen American LegionPost No. 538 (Nov. 9, 1990), Lucas App. No. L-89-336. Because neither Sullivan nor defendants made an argument based upon the foregoing precedent, we do not address it in this decision. Moreover, we observe that if we had applied this precedent to the instant case, the result would have been the dismissal of Sullivan's negligence claims. Thus, under either a review of the merits of Sullivan's claims or the application of the above-cited precedent, the outcome of this case is unfavorable to Sullivan.
 {¶ 37} For the foregoing reasons, we overrule Sullivan's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Sadler and Christley, JJ., concur.
Christley, J., retired, of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Sullivan settled his claims against Healy, so Healy is not an appellee in this appeal.
[2] PS owns the Heritage. South and Donald Pritchard each hold half the stock issued by PS.
[3] In Ohio, courts have employed two tests to determine whether a criminal act was foreseeable. Haralson v. Banc One Corp. (Apr. 16, 1998), Franklin App. No. 97APE08-1134; McKee, supra, at 767. Besides the broad-ranging "totality of the circumstances" test, courts have also used the "prior similar acts" test, in which courts consider only prior similar acts. Id.
[4] The run reports are difficult to decipher, and the only clues as to the reasons for the runs are the "activity codes" assigned and the comments in the "remarks" section.
[5] Although the trial court concluded that defendants had a duty to protect Sullivan, it also determined that there was nothing defendants could have done to protect Sullivan from Healy's punch. Therefore, the trial court concluded that defendants' breach of their duty was not the proximate cause of Sullivan's injuries.