[Cite as *Gilmore v. Ohio Dept. of Transp.*, 2013-Ohio-5940.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JANICE GILMORE, Exec., etc., et al.

  Plaintiffs

  v.

OHIO DEPARTMENT OF TRANSPORTATION

  Defendant

Case No. 2012-02569

Judge Patrick M. McGrath

DECISION

{¶ 1} On February 7, 2013, plaintiffs filed a motion for partial summary judgment on the issue of liability pursuant to Civ.R. 56(A). On April 2, 2013, with leave of court, defendant filed a combined memorandum contra and cross motion for summary judgment pursuant to Civ.R. 56(B). With leave of court, plaintiffs filed a memorandum contra on May 24, 2013. The motions are now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable

minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} This action arises out of a fatal motor vehicle collision that occurred on eastbound Interstate 80 (I-80), at 1:49 p.m., on May 24, 2010, in Trumbull County, Ohio. I-80 is a limited access four-lane divided highway with two eastbound lanes. According to the complaint, defendant was performing a construction project on a portion of I-80 spanning 3.77 miles from Trumbull County straight line mile 8.56 to the Pennsylvania state line. The project involved bridge repair, ramp improvements, resurfacing, guardrail replacement, pavement repair, and structural repairs.

{¶ 5} As a part of the project, defendant closed the eastbound passing lane to perform repairs on "bridge 8.57." According to defendant's transportation engineer 2, John Mesmer, the passing lane closed at approximately 5:30 a.m. on Saturday May 22, 2010, and was to be closed through Monday, May 24, 2010.

{¶ 6} Decedents Shirley Gilmore, Wendy Frost and David Westenfelder were traveling eastbound on I-80 in the right lane in Gilmore's 2007 Ford Expedition. Eugene White was operating a 2005 Peterbilt tractor trailer, both behind and in the same lane as the Ford Expedition. White's tractor trailer was loaded with 57,200 pounds of frozen hamburger. A 2008 Kenworth tractor with two tandem trailers, owned by FedEx Freight Inc., was in the right lane directly ahead of the Ford Expedition. Jamal Shamoo was traveling eastbound on I-80 in the left lane.[1] Shamoo asserts that he slowed his vehicle to 15 miles per hour because of stopped traffic ahead and that all other traffic slowed down in time to stop. Shamoo states that a black tractor trailer "zoomed past" at a "high

---

[1] Shamoo states in his affidavit that the accident occurred in Findlay, Ohio.

rate of speed" and hit the Ford Expedition.  According to the complaint, Gilmore had stopped her vehicle behind the FedEx tractor trailer and was struck from behind by White's tractor trailer, crushing the Ford Expedition between the two tractor trailers. Gilmore, Frost, and Westenfelder were pronounced dead at the scene by Hubbard Township emergency responders.

{¶ 7} According to White, the day of the accident was a clear and sunny day. White loaded his tractor trailer in North Baltimore, Ohio and began driving to Enfield, Connecticut via I-80, a route which White had driven two times per week for the previous eight years.  White had previously driven this same route the prior Thursday and was aware of construction and bridge work in the area.  Leading up to the scene of the accident, White saw a cautionary sign indicating that there was construction ahead. White did not recall any other cautionary signs leading up to the accident.

{¶ 8} White explained how the accident occurred as follows:  "I was traveling east and the road curves and there's an overpass, there's kind of a blind spot there and right at about the point where the accident happened the road, the elevation decreases the road goes downhill, whatever.  The traffic was backed up, I guess to that point.  I didn't, I guess I didn't really notice that the traffic was backed up until it was too late and I hit the brakes and tried to go to the left but it was too late by the time I realized that the traffic was stopped."  Deposition, pages 22-23.  White applied the brakes and began turning to the left but ultimately struck the Ford Expedition, pushing it into the rear of the FedEx tractor trailer.  White was subsequently convicted of three counts of vehicular homicide.

{¶ 9} Plaintiffs argue that defendant was negligent in both closing a lane of traffic on I-80 and in failing to reduce the speed limit in the constructin zone.  In support of

their position, plaintiffs submitted the affidavits of engineer Joseph Filippino[2] and plaintiffs' counsel Jean Goeppinger McCoy along with various exhibits attached to the affidavit. Defendant argues that it acted consistent with applicable Ohio Department of Transportation (ODOT) policy in setting up the construction zone. Defendant further argues that White's failure to maintain an assured clear distance ahead was the sole proximate cause of the accident. In support of its position, defendant submitted the affidavits of ODOT engineer Lisa Bose and Jamal Shamoo. The parties also filed the deposition transcripts of John Mesmer, Lisa Bose, Jeffery Hall, and Eugene White.

{¶ 10} As an initial matter, Civ.R. 56(E) provides that supporting "affidavits shall be made on personal knowledge * * * and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Plaintiffs' counsel's affidavit does not meet the requirements of Civ.R.56(E) and will therefore not be considered by the court. *See Ray v. Ramada Inn North*, 171 Ohio App.3d 1, 2007-Ohio-1341 (2nd Dist).

{¶ 11} Lisa Bose, defendant's district work zone traffic manager (DWZTM), was responsible for the analysis and decision to close one lane of traffic on I-80 for the project on May 24, 2010. Bose explained that she estimated the traffic queue length on I-80 pursuant to section 640-13.2 of the Traffic Engineering Manual (TEM) entitled "Queue Length Predictions for Freeways."[3] Bose then looked to defendant's Permitted Lane Closure Chart (PLCC), which was created by defendant's central office, to determine whether construction work can be completed within the restricted time frames shown in the chart. Bose then compared the time frames permitted to the amount of time the contractor would need for the project. On this particular project, the contractor needed additional time beyond what is permitted on the chart.

---

[1] Plaintiffs attached Filippino's affidavit to their memorandum contra. Defendant's May 31, 2013 motion to strike the affidavit of Joseph Filippino is DENIED.
[1] The TEM is promulgated through defendant's Office of Traffic Engineering.

{¶ 12} Bose then performed an in-depth analysis using traffic volumes calculated to the month the construction work would be completed.  To do so, Bose gathered information from the closest Automatic Traffic Recorder (ATR), which reports actual traffic flow in an area three to six months after the data is collected.  Bose asserted that such traffic counts were the most current counts available for use at the time.  Using a spreadsheet based on conversion factors provided by defendant, Bose then revised the traffic counts from a day in August to a day in June because June traffic volumes are typically higher than traffic volumes in May.

{¶ 13} Bose calculated a maximum queue of 0.7 miles at 3:00 p.m. on a Monday in June in the eastbound direction of I-80 by using a "Queue Calculations Worksheet for One Lane Freeway Work Zones" provided by defendant's central office.  Bose also obtained two other values for the worksheets as a part of her analysis.  Those values were the capacity of the work zone and the number of queued vehicles in a mile.  Bose asserted that the 0.7 queue calculation was not prohibited by defendant's Policy on Traffic Management in Work Zones, policy 516-003(P), which allows a queue of less than 0.75 miles.  Therefore, Bose concluded that because the calculated queue did not violate defendant's lane closure policies, the lane closure could be extended past what was shown on the PLCC.

{¶ 14} Bose further stated that at the time the project was under construction in the spring of 2010, variable speeds were not permitted in Ohio by the TEM.  Bose stated that the project's "longest duration continuous zone" was four days, and that the work was road resurfacing and repair.  As such, Bose asserted that a speed reduction could not have been used.

{¶ 15} Plaintiffs submitted the affidavit of their expert Joseph Filippino.  According to Filippino, the PLCM [Permitted Lane Closure Maps] for I-80 between Ohio State Route 11 and U.S. Route 62 East forbade the closure of a lane of traffic on Mondays between 1:00 and 2:00 p.m. during the time frame of the construction project.  In his

affidavit, Filippino asserts that there is no evidence that the PLCM had been updated or reflected current traffic conditions at the time of Bose's analysis. Filippino also asserts that there is no evidence that Bose utilized the posted legal speed limit or the most current traffic volume and truck percentage data. According to Filippino, there is no evidence that Bose prepared or submitted a Traffic Management Plan or a request for exceptions for delays that exceed the allowable queue threshold before construction started.

{¶ 16} Filippino further faults ODOT for allegedly failing to determine whether the queue length from the computer model and the actual queues generated by the construction zone were different as required by ODOT Policy 516-003(P). Finally, Filippino asserts that ODOT was required to post signs indicating that traffic fines were doubled for speeding in the construction zone and that ODOT had the authority to reduce the speed limit on I-80 eastbound prior to the beginning of the construction project.

{¶ 17} "To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92 (1988), citing *Bennison v. Stillpass Transit Co.*, 5 Ohio St.2d 122 (1966).

{¶ 18} ODOT is subject to a general duty to exercise ordinary, reasonable care in maintaining state highways. *White v. Ohio Dept. of Transp.*, 56 Ohio St.3d 39, 42 (1990). Although ODOT is not an insurer of the safety of the state's highways, ODOT has a general duty to maintain and repair state highways such that they are free from unreasonable risk of harm to the motoring public, and this duty is owed both under normal traffic conditions and during highway construction projects. *Roadway Express, Inc. v. Ohio Dept. of Transp.*, 10th Dist. No. 00AP-1119 (June 28, 2001). However, "ODOT cannot guarantee the same level of safety during a highway construction project

as it can under normal traffic conditions. * * * ODOT is, nonetheless, required to provide the traveling public with a reasonable degree of safety in construction zones * * *. [A] court must look at the totality of the circumstances in determining whether ODOT acted sufficiently to render the highway reasonably safe for the traveling public during the construction project." *Basilone v. Ohio Dept. of Transp.*, 10th Dist. No. 00AP-811 (Feb. 13, 2001), citing *Feichtner v. Ohio Dept. of Transp.*, 114 Ohio App.3d 346 (10th Dist.1995).

{¶ 19} "The scope of ODOT's duty to ensure the safety of state highways is more particularly defined by the Ohio Manual of Uniform Traffic Control Devices [OMUTCD], which mandates certain minimum safety measures." *State Farm Auto. Ins. Co. v. Ohio Dept. of Transp.*, 10th Dist. Nos. 98AP-936, 98AP-1028, 98AP-960, 98AP-1536, 98AP-976, 99AP-48 (June 8, 1999). "[N]ot all portions of the manual are mandatory, thereby leaving some areas within the discretion and engineering judgment of [defendant.]" *Leskovac v. Ohio Dept. of Transp.*, 71 Ohio App.3d 22, 27 (10th Dist.1990), citing *Perkins v. Ohio Dept. of Transp.*, 65 Ohio App.3d 487, 491 (10th Dist.1989). The parties do not dispute that ODOT's duties are set forth in the OMUTCD and ODOT's TEM.

{¶ 20} Additionally, the common law of Ohio also imposes a duty of reasonable care upon motorists, which includes the responsibility to observe the environment in which one is driving. *Hubner v. Sigall*, 47 Ohio App.3d 15, 17 (10th Dist.1988). "Assured clear distance" is the distance between the car the driver is operating and a reasonably discernable object in the driver's path of travel. A person violates the assured clear distance statute if "there is evidence that the driver collided with an object which 1) was ahead of him in his path of travel, 2) was stationary or moving in the same direction as the driver, 3) did not suddenly appear in the driver's path, and 4) was reasonably discernible." *Pond v. Leslein*, 72 Ohio St.3d 50, 52 (1995). *See also* R.C. 4511.21(A).

{¶ 21} "'The term "proximate cause," is often difficult of exact definition as applied to the facts of a particular case. However, it is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability.'" *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 216, 223 (1957).

{¶ 22} "It is because what constitutes a 'natural and continuous sequence' is insusceptible of determination other than in the context of a particular case that the issue of proximate cause is ordinarily one for determination by the jury. However, where reasonable minds could not differ with respect to the matter because the circumstances clearly indicate an obvious cause and effect relationship, the issue may be determined as a matter of law." *Ornella v. Robertson*, 14 Ohio St.2d 144, 151 (1968). "'[W]here no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the [trier of fact] (to decide), and, as a matter of law, judgment must be given for the defendant.'" *Sullivan v. Heritage Lounge*, 10th Dist. No. 04AP-1261, 2005-Ohio-4675, ¶ 33, quoting *Stuller v. Price*, 10th Dist. No. 03AP-66, 2004-Ohio-4416, ¶ 70. "It is well settled that the issue of proximate cause is not subject to speculation and that conjecture as to whether a breach caused the particular damage is insufficient as a matter of law. If the plaintiff's quantity or quality of evidence on proximate cause requires speculation and conjecture to determine the cause of the event, the defendant is entitled to summary judgment as a matter of law." (Citations omitted.) *Mills v. Best Western Springdale*, 10th Dist. No. 08AP-1022, 2009-Ohio-2901, ¶ 20. Accordingly, summary judgment is appropriate where reasonable minds could not differ as to the proximate cause.

{¶ 23} Although the parties dispute whether defendant's actions complied with the OUMTCD and TEM, there is no reasonable dispute that the sole proximate cause of the accident was White's failure to observe his surroundings and failure to maintain an assured clear distance ahead. There is no dispute that plaintiffs' decedent's Ford Expedition was ahead of White's tractor trailer in the same lane of travel and was stationary or moving in the same direction. Furthermore, there is no evidence that the Ford Expedition suddenly appeared or was somehow not reasonably discernible. Indeed, White had traveled this portion of I-80 on a frequent basis for the previous eight years and was familiar with the freeway design. White was aware that there was construction work and bridge repair in the area and even recalls seeing a cautionary sign indicating that there was construction work ahead. Moreover, subsequent to the accident, White received a conviction of three counts of vehicular homicide.

{¶ 24} Additionally, plaintiffs presented no evidence connecting any alleged breaches of the standard of care with the proximate cause of the accident. Plaintiffs did not present any evidence that an alleged failure to reduce the speed in the construction zone or an allegedly improper lane closure on I-80 in the construction zone proximately caused the accident. Accordingly, the court concludes that there is no genuine issue of material fact regarding the sole proximate cause of the accident and that defendant is entitled to judgment as a matter of law. Therefore, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant. Plaintiffs' motion for partial summary judgment shall be denied.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JANICE GILMORE, Exec., etc., et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant

Case No. 2012-02569

Judge Patrick M. McGrath

<u>JUDGMENT ENTRY</u>

{¶ 25} A non-oral hearing was conducted in this case upon the parties' cross motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Plaintiffs' motion for partial summary judgment is DENIED. All future events are VACATED. All remaining motions are DENIED as moot. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
PATRICK M. MCGRATH
Judge

cc:

Craig D. Barclay
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Jean M. McCoy
1700 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202

Louise M. Roselle
119 East Court Street, Suite 530
Cincinnati, Ohio 45202

003
Filed August 26, 2013
Sent to S.C. Reporter April 30, 2014