KRAUSE et al., Appellants,

v.

SPARTAN STORES, INC. et al., Appellees.

[Cite as *Krause v. Spartan Stores, Inc.,* 158 Ohio App.3d 304, 2004-Ohio-4365.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–03–1244.

Decided Aug. 20, 2004.

308

Michelle L. Kranz, for appellants.

John D. Wiley Jr. and Timothy C. Kuhlman, for appellee Spartan Stores, Inc.

Thomas J. Antonini and Jennifer C. Johnson, for appellee R&D Investors.

---

PIETRYKOWSKI, Judge.

{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, which granted summary judgment to appellees, Spartan Stores, Inc. and R&D Investors, Inc. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} At approximately 6:00 p.m. on January 2, 2001, appellant Yvonne Krause was assaulted by an unknown person while she was putting groceries in her car in the parking lot of the Foodtown store located at the corner of Dorr Street and Reynolds Road in Toledo, Ohio. At all relevant times, the Foodtown store at this location was operated by appellee Spartan Stores, Inc. Spartan leased the property from appellee R&D Investors, Inc., which owns the entire shopping center in which the Foodtown store is located. Krause sustained injury, and she and her husband, appellant Tim Bucher, subsequently filed the instant complaint against appellees. The two-count complaint alleged negligence and loss of consortium.

{¶ 3} Appellees both moved for summary judgment in the trial court, and the trial court granted both motions. In its decision, the trial court noted that the duty to protect business invitees from the criminal acts of third parties does not arise unless the business owner is in possession and control of the premises. Construing the lease between appellees, the trial court found a question of fact as to whether R&D controlled the premises. However, because the trial court also found as a matter of law that the assault was not foreseeable to either appellee, the court held that both were entitled to summary judgment.

{¶ 4} Appellants now appeal, setting forth the following assignment of error:

{¶ 5} "The trial court erred in granting appellees' motions for summary judgment, as genuine issues of material fact existed as to appellees' duties to appellant and breach of those duties."

{¶ 6} We review the trial court's ruling on the summary judgment motion de novo. *Conley–Slowinski v. Superior Spinning* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when she demonstrates that "there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party." *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 617, 687 N.E.2d 735.

{¶ 7} To prove negligence, a plaintiff must establish a duty, breach of that duty, and causation. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. As for the duty question, the trial court properly noted that a business owner has no duty to protect its customers from criminal acts of third parties unless the criminal act was foreseeable, see *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, paragraphs one and three of the syllabus; *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 191–192, 583 N.E.2d 1071; *Warner v. Uptown–Downtown Bar* (Mar. 13, 1998), 6th Dist. No. WD–97–051, 1998 WL 123087, and the business owner was in possession and control of the premises, *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, syllabus. However, a business owner is not an insurer of its customers' safety. *Howard,* 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, at paragraph two of the syllabus; *Reitz,* 66 Ohio App.3d at 191, 583 N.E.2d 1071. To determine whether a business owner knew or should have known of the danger—in other words, whether the criminal act was foreseeable—the court should consider the totality of the circumstances. See id. at 193, 583 N.E.2d 1071; *Warner,* supra. In considering the totality of the circumstances, relevant evidence may include the location and character of the business and past crimes of a similar nature. *Reitz,* 66 Ohio App.3d at 193, 583 N.E.2d 1071, quoting Restatement of the Law 2d, Torts (1965), Section 344, comment *f.* Because

criminal acts are largely unpredictable, the totality of the circumstances must be "somewhat overwhelming" in order to create a duty. *Reitz*, 66 Ohio App.3d at 193–194, 583 N.E.2d 1071. Finally, whether a duty exists is a question of law for the court. *Reitz*, 66 Ohio App.3d at 192, 583 N.E.2d 1071; *Mussivand*, 45 Ohio St.3d at 318, 544 N.E.2d 265.

{¶ 8} There is no dispute that Spartan was in possession and control of the premises on which appellant Krause was assaulted. However, R&D contends that it owes no duty to appellants because it was not in possession and control of the premises and because the criminal act was not foreseeable. We will first address whether R&D was in possession and control of the premises.

{¶ 9} R&D argues in its appellee's brief that the trial court erred in finding that a question of fact existed as to whether R&D was in possession and control of the circumstances. Appellants contend that R&D is not permitted to make this argument because R&D did not file a cross-appeal. We disagree. App.R. 3(C)(2) provides:

{¶ 10} *"(2) Cross appeal not required.* A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal."

{¶ 11} R&D falls squarely within this rule. It does not seek to change the judgment. Instead, R&D seeks to defend the judgment on the question of possession and control, a ground "other than that relied on by the trial court." App.R. 3(C)(2). The trial court relied on the foreseeability question in rendering its judgment in favor of R&D. We therefore find that, according to App.R. 3(C)(2), R&D was not required to file a cross-appeal in order to argue the issue of possession and control.

{¶ 12} To determine whether a business owner had possession and control of the premises, "[t]he test to be applied * * * has been expressed as 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.'" *Simpson*, 73 Ohio St.3d at 132, 652 N.E.2d 702, quoting *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 497 N.E.2d 1118. We will first examine the lease between the appellees to determine whether R&D had the power and the right to admit or exclude people from the premises. The lease, of course, is a contract between the parties. If terms in a contract are clear and unambiguous, interpretation is a question of law for the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Where the language is ambiguous, however, a question of fact for the jury exists. *Amstutz v. Prudential Ins. Co. of Am.* (1940), 136 Ohio St. 404,

408, 16 O.O. 572, 26 N.E.2d 454. See, also, *Raceway Park, Inc. v. Gladieux Food Servs., Inc.* (July 17, 1981), 6th Dist. No. L–80–355, 1981 WL 5712.

{¶ 13} Section 2.3 of the lease indicates that the leased premises include the store itself and the common areas, including the parking lot and sidewalks. Section 5.1 of the lease provides that R&D shall make available the common areas and shall not change the parking lot or other common area without Spartan's consent. This section also provides that R&D is responsible for lighting the parking lot and other common areas. Section 5.2 provides:

{¶ 14} "Tenant and its concessionaires, officers, employees, agents, customers, and invitees shall have the right to use the common areas as shown on Exhibit B, subject to such reasonable rules and regulations as Landlord may from time to time impose."

{¶ 15} The trial court apparently found the language of these contract provisions ambiguous, as it held:

{¶ 16} "From these provisions, a finder of fact could conclude that R&D, as landlord, had the duty to exercise ordinary care to keep the common, parking areas in a reasonably safe condition. Thus, there remains an issue of fact as to whether R&D had control of the parking area."

{¶ 17} However, control involves both the right and power to admit or exclude persons from the premises as well as a "substantial exercise of that right and power." See *Simpson,* 73 Ohio St.3d at 132, 652 N.E.2d 702. Therefore, even if a question of fact exists about whether R&D retained the right to admit or exclude persons from the premises, there is no record evidence that it ever exercised that right. Therefore, R&D did not have possession and control of the premises, and it did not have a duty to appellants.

{¶ 18} Because we find that R&D was not in possession or control of the premises, R&D had no duty to appellants to make the premises safe for them. However, we agree with the trial court that, even if R&D did retain control of the premises, it would still not owe a duty to appellants if the assault on appellant Krause was unforeseeable. We address that question now.

{¶ 19} In this case, appellants offered the following evidence to show that the crime was foreseeable: (1) police "run reports" listing calls made to the police about incidents occurring at this particular Foodtown ("store 28"); (2) a "Crime Cast" report commissioned by Spartan, which purports to show the likelihood of crimes occurring around all Foodtown locations, including store 28; (3) a report and affidavit of an expert who testified that Spartan failed to meet the "reasonable standard of care" for security, which resulted in appellant Krause's assault;

(4) deposition testimony of two current employees, a past employee, and the deputy sheriff working security at store 28 on the night of the assault; and (5) evidence that a similar purse-snatching and assault had occurred on the premises some three years earlier. We will discuss each of these pieces of evidence in turn.

{¶ 20} The police run reports appear to be computer-generated lists of all calls made to the police department for incidents occurring at store 28 over a four-year period. These reports use certain codes, such as an offense code and a violation code. The violation code appears to be the Revised Code section implicated in the call. The offense code is inscrutable to the casual reader, as is the column titled "FBI Disp." As summary judgment evidence, these run reports pose at least two problems. First, they are not accompanied by the affidavit of anyone qualified to read them, and the court is left to guess how to do so. Second, the reports indicate only that police were called to the premises; they do not indicate whether any of the calls were found to have merit. In other words, the run reports do not indicate the outcome of these police calls. For these reasons, we find that the run reports are insufficient summary judgment evidence. We are mindful that a trial court and a reviewing court are not permitted to weigh evidence in the summary judgment context. However, we may, and indeed must, judge whether certain evidence is sufficient for summary judgment purposes. *Nelson v. Taoka* (1992), 82 Ohio App.3d 101, 107, 108, 611 N.E.2d 462.

{¶ 21} We have previously come to a similar conclusion in a similar case. See *Rapino v. Bauman Auto Stores* (Aug. 27, 1999), 6th Dist. No. L–99–1107, 1999 WL 651611, Appendix. In that case, noting that the run reports did not "distinguish between crime reports and actual prosecutions" and that the reports did not "contain information as to the nature of the activities occurring at the address listed," the trial court, in a decision we adopted, held that the run reports were not "sufficient evidence to create an inference that the defendant knew or should have known of any potential danger." Appellants, focusing on language in *Rapino* that the run reports, by themselves, were not competent summary judgment evidence, cite this case as standing for the proposition that while the run reports alone are not sufficient, they may be sufficient when joined with other evidence. Appellants are misconstruing the holding in *Rapino*. In *Rapino*, as in this case, the run reports were simply attached to a memorandum; they were not introduced by way of affidavit or deposition or in any other way that would make them proper summary judgment evidence. Therefore, citing Civ.R. 56(C), the trial court held that the reports were not *competent* summary judgment evidence. It then stated that even if it were to consider them, they were *insufficient* for the reasons explained above. Therefore, we find, as in *Rapino*, that run reports are

insufficient to create a question of fact for trial.[1]

{¶ 22} Appellants also rely on a document known as a Crime Cast report. This report was commissioned by Spartan to get a picture of crime rates in the areas surrounding their Foodtown stores. In a nutshell, the Crime Cast includes information on seven crimes: homicide, rape, robbery, aggravated assault, burglary, larceny, and motor-vehicle theft. Then, for each geographical area covered, the report attempts to predict the risk of each of those crimes occurring. A score of 100 is considered an average risk; therefore, any score above 100 is considered a higher-than-average risk, and any score below 100 is considered a lower-than-average risk. For each geographical area, the report predicts the risk of each of the seven crimes occurring as compared to the national, local, and state averages for the past, the present, and the future. For example, in the 1999/2000 time period, in the geographical area surrounding store 28, the risk of homicide occurring was, according to the report, 93 as compared to the national average (therefore lower than the national average), 108 as compared to the state average (therefore slightly higher than the state average), and 121 as compared to the county average (again, higher than the county average).

{¶ 23} Appellants use the Crime Cast report to show that crime in the area surrounding store 28 was, on the whole, higher than the national, state, and county averages. Brenda Gibson, a security employee for Spartan, testified that, while Spartan ordered this study, nobody at Spartan ever analyzed it or used the information in it to make any security policies at the stores. According to appellants, the Crime Cast report should have alerted Spartan to the fact that the risk of crime in the area surrounding store 28 was high, and Spartan should have taken greater measures to protect its customers. In other words, because Spartan knew of the study, it should have known that a crime such as an assault was likely to occur.

{¶ 24} Like the run reports, the Crime Cast report is problematic as summary judgment evidence. First, it is not accompanied by an affidavit or deposition testimony of someone qualified to read and interpret it. Therefore, the court is left to guess at what it means. Second, to the extent that the report is used to establish that store 28 is in a high-crime area (which would be relevant to this issue), it fails to do so. While the Crime Cast report indicates that the risk of, say, robbery is 289 as compared to the state average, these numbers do not,

---

1. In their memorandum in opposition to appellees' motions for summary judgment in the trial court, appellants referred to the run reports and indicated that they were attached to the memorandum. They were not, in fact, attached. The trial court noted this but apparently took appellants at their word when appellants stated in their memorandum what the reports showed. Appellants have attached the run reports to their appellate brief. We need not address the legal significance of these irregularities, given our holding on this issue.

apparently, reflect what the state average is. As appellee Spartan aptly points out, if there was one robbery in the state in a given time period and three in the geographical area surrounding store 28 in the same time period, the Crime Cast report would indicate that the predicted risk for robbery in the area surrounding store 28 is three times the state average. The report does not, in absolute terms, indicate that a certain geographical area is a high-crime area, only that it is higher or lower than the average for some other area.

{¶ 25} Additionally, the Crime Cast report does not indicate the boundaries of the geographical area that it is considering. While a map is enclosed with the report, it is a map for the geographical area surrounding a different store. Even if the proper map were included, it would likely be of little help. The map apparently shows two concentric circles around what we assume to be a Food-town store. We are left to wonder whether crime can be accurately predicted for a fixed location based on statistics of crime occurring two or three or five miles away. In short, the report as a whole tells very little about the foreseeability of crime in a given area. But again, we reach these conclusions based only on our reading of the report completely unaided by anyone qualified to interpret it. In other words, if we were forced to guess about the significance of the Crime Cast report, these are the conclusions we would reach. We therefore find the Crime Cast report insufficient for summary judgment purposes.

{¶ 26} Next, appellants rely on expert testimony to show that appellees knew or should have known of the risk of harm to appellant Krause. Dr. John Lombardi, who is a board-certified security trainer, a board-certified protection officer, a certified security officer, and a diplomate of the Board of Forensic Examiners, testified as an expert for appellants. Dr. Lombardi submitted an affidavit and a report detailing his conclusions. He averred in his affidavit that both appellees "failed to meet the minimum industry standard of care, and should have reasonably foreseen the risks posed to business invitees by the creation of a 'crime magnet.'" He also testified that appellees failed to meet "the reasonable standard of care" and that failure to do so resulted in appellant Krause's injuries. Finally, he testified in his affidavit that the attack on appellant Krause was both "nonrandom" and "nonspontaneous."[2]

{¶ 27} In his report, Dr. Lombardi explains that he analyzed the case using a method he created called the "Predatory Prevention Matrix," which employs four factors: policy, control, risk, and phases of attack. After defining each of these factors and applying each to the facts of this case, Dr. Lombardi concluded:

---

2. Dr. Lombardi explains in his report that the term "nonrandom" means that opportunity for crime existed; "nonspontaneous" means that time existed to prevent the crime.

{¶ 28} "Spartan Stores, Inc., et al., failed to provide adequate security on their premises that would have deterred, displaced or otherwise proactively prevented the occurrence of the criminal Opportunity for the brutal attack on Ms. Krause.

{¶ 29} "The fact that a totally ineffective security program and uncontrolled operational environment were allowed to impact on the premises and continuously threaten customers is evidence that defendants [appellees] did not intend to limit any criminal Opportunity to attack any patron assets or use any unwritten unsubstantiated policy guidelines to implement any Controls, proactively."

{¶ 30} In short, Dr. Lombardi concluded that since appellees did not attempt through security policies and practices to reduce the opportunity for crime on its premises, crime was foreseeable.

{¶ 31} We find that Dr. Lombardi's expert testimony is irrelevant to the issue at hand. The testimony, in effect, puts the proverbial cart before the horse. Dr. Lombardi states the opinion that crime on appellees' premises was foreseeable because appellees did not have adequate security. This ignores the fact that appellees are not required to provide any security unless crime is foreseeable. See *Howard*, 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804, at paragraphs one and three of the syllabus. To determine whether a particular type of crime is foreseeable, a court is to consider the totality of the circumstances, including the nature and location of the business and other prior crimes of a similar nature. *Reitz*, 66 Ohio App.3d at 192–193, 583 N.E.2d 1071. Since Dr. Lombardi's testimony sheds no light on the foreseeability question, his testimony is irrelevant. See Evid.R. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). If anything, Dr. Lombardi's testimony is relevant to the question of whether appellees breached a duty; here, we are concerned with whether a duty exists in the first place.[3]

{¶ 32} Appellants also rely on deposition testimony of Brenda Gibson, Spartan's Regional Manager of Security;[4] Blaine Grant, Director of Loss Prevention for Seaway Foodtown, Spartan's successor; Antonio Feudi, Spartan's assistant store manager at store 28 on the day of appellant Krause's assault; and Timothy Zolciak, the off-duty deputy sheriff who was providing security for Spartan at store 28 on the day of the incident. Appellants point to this evidence

---

3. Appellants claim that the trial court erred in ignoring Dr. Lombardi's testimony. Given our holding that the expert testimony is irrelevant, even if the trial court did overlook this testimony, it did not commit prejudicial error in doing so.

4. Gibson is now employed by Duhadway, Kendall & Associates, a firm that contracts with Spartan to provide Spartan's security services.

to show (1) that Spartan had no formal policies or training programs addressing customer safety or security (except for a policy that employees leave the store in pairs after closing), (2) that Spartan had no set policy for checking on lighting or assessing the adequacy of it, (3) that Spartan purposely chose not to track trends in crime around its stores, and (4) that lighting might have been a causal factor in appellant Krause's attack.

{¶ 33} This evidence, like the expert testimony discussed above, is irrelevant to the question of whether appellant Krause's attack was foreseeable. As noted earlier, failure to have formal security-related policies or training programs, failure to track crime, and failure to have formal policies on lighting is irrelevant unless the crime in question was foreseeable. The testimony about having employees leave in pairs likewise is irrelevant to the question of whether an assault in the parking lot was foreseeable. Having such a policy might show that Spartan was concerned for its employees' safety, but it does not show that Spartan had reason to know that an assault was likely to occur.[5]

{¶ 34} With regard to the possibility that lighting was a factor in appellant Krause's assault, appellants point to the deposition testimony of Antonio Feudi and a copy of an e-mail authored by him that became a deposition exhibit. In that e-mail, which is dated January 22, 2001, Feudi noted that five lights in the parking lot of store 28 were nonfunctioning. This message was in reply to a message from another Spartan employee instructing other employees to check the parking lot lighting at their stores after dark to make sure that they were all working. He stated, "[L]ately our sign and lighting people have been a little slow to react for various reasons." This evidence, too, is irrelevant. It shows that lights were out three weeks after the assault on appellant Krause. There is no evidence that the lighting was insufficient on the night that Krause was assaulted. In fact, contrary evidence existed. Deputy Zolciak testified that when he came upon the scene just after the incident, the lighting was sufficient to be able to see a piece of paper in front of him. Also, a report of the incident created by a loss-prevention officer stated that the lighting was sufficient; this report did not indicate that any of the parking lots lights were not working.

---

5. Appellants rely on *Allison v. McDonald's Restaurants* (Nov. 4, 1993), 8th Dist. No. 63170, 1993 WL 453689, a case where store management prohibited employees from going behind the restaurant alone at night. The court held that the crime, an abduction and rape at the drive-through window, was foreseeable. We need not decide whether we agree with the court that this prohibition was relevant to the foreseeability question because the case is distinguishable on its facts. The evidence showed that "several hundred crimes" had been reported in the surrounding area in the previous three years, including two aggravated robberies at that particular McDonald's.

{¶ 35} Finally, there is evidence that a similar purse-snatching occurred in 1998, some three years before appellant Krause's assault. This evidence is relevant to the question of whether the crime was foreseeable.

{¶ 36} After examining the record in its entirety, we conclude that the only sufficient, relevant evidence to show that this crime was foreseeable is that a similar purse-snatching occurred on the premises in 1998. We find as a matter of law that one crime three years earlier does not make this particular assault foreseeable. See, e.g., *Reitz,* 66 Ohio App.3d 188, 583 N.E.2d 1071 (theft and stabbing in parking lot not foreseeable when car thefts were "fairly infrequent," store not located in a high crime area, and only one prior similar incident occurred three years earlier); *Duncan v. B & B, Inc.,* 6th Dist. No. L–02–1131, 2002-Ohio-7302, 2002 WL 31888169 (stabbing at bar not foreseeable where, although there were approximately 12 fist fights at the bar in the previous four years, a knife had not been involved in an altercation for at least ten years); *Barnes v. N. Shore Car Wash* (Dec. 3, 1998), 8th Dist. No. 73142, 1998 WL 842075 (murder at car wash not foreseeable even though the car wash was in a high-crime area where previous crimes on and around the premises included vandalism, robberies, and thefts); *Stone v. Shell Oil Co.* (May 9, 1996), 8th Dist. No. 68807, 1996 WL 239864 (murder at gas station not foreseeable, even though gas station might have been in a high-crime area, where previous criminal acts involved thefts but not violent assaults of a similar nature). But, see, *Warner,* supra, 6th Dist. No. WD–97–051, 1998 WL 123087 (assault at bar foreseeable where 30 to 40 assaults had occurred at the bar in the preceding four years).

{¶ 37} Because we find that the assault on appellant Krause was not foreseeable, we find that neither appellee owed a duty to appellants to warn or otherwise make the premises safe for them. Appellants' sole assignment of error is found not well taken. Accordingly, appellee's assignment of error is rendered moot.

{¶ 38} Upon consideration whereof, we find that substantial justice was done the parties complaining, and the decision of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

KNEPPER and SINGER, JJ., concur.