[Cite as *Heider v. Siemens*, 2011-Ohio-901.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

CYNTHIA SUE HEIDER, INDIVIDUALLY
AND AS ADMINISTRATOR OF THE        CASE NO. 1-10-66
ESTATE OF MATTHEW J. HEIDER, ET AL.,

    PLAINTIFFS-APPELLANTS,

  v.

SIEMENS, AG, ET AL.,                       O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV2008-0812

**Judgment Affirmed**

**Date of Decision: February 28, 2011**

APPEARANCES:

     *Marvin A. Robon* for Appellant

     *Larry E. Yunker* II for Appellant

     *Brian D. Sullivan* for Appellee, U.S. Utility Contractor Company, Inc.

     *Brian L. Wildermuth* for Appellees, Ottawa Oil Company and
        Ronald E. Funk

     *Martin W. Williams* for Appellee, Ronald E. Funk

**PRESTON, J.**

{¶1} Plaintiffs-appellants, Cynthia Sue Heider, individually and as administrator of the Estate of Matthew J. Heider, and Cynthia Sue Heider, as parent, natural guardian, and next friend of Rachel E. Heider ("Rachel"), a minor, (collectively "the estate") appeal the Allen County Court of Common Pleas' grant of summary judgment in favor of defendants-appellees Ottawa Oil Company, Inc. ("Ottawa Oil"), Ronald Funk ("Funk"), and US Utility Contractor Company, Inc. ("US Utility").  For the reasons that follow, we affirm.

{¶2} On November 14, 2006 around 8:30 p.m., Dr. Matthew J. Heider ("Dr. Heider") was driving a Chevy Suburban southbound on Eastown Road in American Township, Allen County, Ohio approaching the intersection of Eastown and Allentown Roads (State Route 81). (Complaint, Doc. No. 1, ¶24); (Collision Reconstruction Report, Stechschulte Ex. D).  Dr. Heider's daughter, Rachel, was a passenger in the vehicle. (Complaint, Doc. No. 1 at ¶5).  At the same time, Funk was operating a Mack tractor-tanker trailer loaded with 8,500 gallons of gasoline westbound on Allentown Road (State Route 81), approaching the same intersection. (Id. at ¶25).  The Mack tractor-tanker trailer collided with Dr. Heider's Suburban causing the tractor-tanker trailer to roll onto its side, the gasoline to ignite, and the tanker trailer to explode, with Funk being injured but escaping shortly prior to the explosion. (Id. at ¶27).  As a result of the collision, Dr. Heider's Suburban was pushed approximately one hundred (100) feet

westbound on Allentown Road, causing minor injuries to Rachel. (Id. at ¶¶31, 37). Dr. Heider died as a result of the crash and subsequent fire. (Id.).

{¶3} On June 2, 2008, the estate filed a wrongful death action in the Allen County Court of Common Pleas against Siemens, AG; Siemens Corporation; Siemens Energy and Automation, Inc.; DGL Consulting Engineers, LLC, d/b/a DGL Consulting Engineers; US Utility; Allen County, Ohio; American Township, Ohio; Funk; Ottawa Oil; Acme Leasing Co.; and John Does one, two, three, four, five, and six alleging negligence in the design, manufacture and/or installation of the intersection and/or traffic control device (Count One); negligent maintenance of the intersection and/or traffic light (Count Two); negligence by Funk (Count Three); negligence and vicarious liability by Ottawa Oil (Count Four); negligence of Acme Leasing (Count Five); and strict liability against Siemens, DGL Consulting, US Utility and/or John Doe as manufacturers and/or suppliers of the traffic control device. (Count Six). (Doc. No. 1).

{¶4} On June 16, 2008, the estate filed a motion to stay the proceedings until a related case that the estate had filed in the Ohio Court of Claims, *Heider v. Dept. of Transportation*, Case No.: C2008-06521, was fully adjudicated. (Doc. No. 12). On June 24, 2008, the trial court granted the motion. (Doc. No. 16). However, on June 25, 2008, Funk filed a memorandum in opposition to the motion to stay, and on July 3, 2008, the trial court set the matter for hearing upon reconsideration. (Doc. Nos. 16, 26).

3

**{¶5}** On June 30, 2008, DGL Consulting Engineers and Allen County filed answers. (Doc. Nos. 19, 21). On July 1 and 2, 2008, Acme and Siemens, respectively, filed motions for an extension to move, plead, or otherwise answer. (Doc. Nos. 22-23). The trial court granted the extensions on July 2-3, 2008. (Doc. Nos. 24-25).

**{¶6}** On July 15, 2008, the trial court held a hearing on the estate's motion to stay proceedings. (Doc. No. 35). Following the hearing, the trial court lifted its previously imposed stay of proceedings effective July 15, 2008 and ordered the defendants to move or otherwise plead within thirty (30) days. (Id.).

**{¶7}** On July 21, 2008, American Township filed its answer. (Doc. No. 36). On July 25, 2008, defendants Acme Leasing, Ottawa Oil, and Funk filed answers. (Doc. Nos. 42, 44-45). Funk also filed a counterclaim against the estate for the injuries he sustained as a result of the accident. (Doc. No. 45). On August 5, 2008, the estate filed an answer to Funk's counterclaim. (Doc. No. 50).

**{¶8}** On August 4, 2008, Siemens Energy and Automation, Inc. filed its answer. (Doc. No. 52). On August 14, 2008, Siemens AG and Siemens Corp. filed an unopposed second motion for extension of time to move, plead, or otherwise answer, which the trial court granted. (Doc. Nos. 53, 56).

**{¶9}** On September 11, 2008, Siemens AG and Siemens Corp. filed motions to dismiss for lack of personal jurisdiction and want of service of process. (Doc. Nos. 62, 64).

{¶10} On September 29, 2008, US Utility filed a motion for leave to file answer *Instanter* on the basis that it did not know the trial court's previously ordered stay of proceedings had been lifted, which motion the trial court granted. (Doc. Nos. 66, 68). US Utility filed its answer on September 30, 2008. (Doc. No. 69).

{¶11} On October 29, 2008, the trial court dismissed Siemens AG and Siemens Corp. from the case with prejudice. (Doc. No. 76).

{¶12} On November 13, 2008, the estate filed its first amended complaint against the same defendants as in its original complaint and, additionally, Eagle Traffic Systems (a business unit of Siemens Energy and Automation, Inc.), Baldwin and Sours, Inc., the Shelly Company, Oldcastle, Inc., Eberle Design, Inc., and Athens Technical Specialists, Inc. (Doc. No. 83).

{¶13} On November 13, 2008, the trial court issued a nunc pro tunc order rescinding its order dismissing Siemens AG and Siemens Corp. with prejudice and granting the estate through November 18, 2008 to respond to the motions. (Doc. No. 85).

{¶14} On November 19, 2008, the estate filed a Civ. R. 41(A) notice of voluntary dismissal without prejudice of the claims against defendants Siemens AG, Siemens Corp., DGL Consulting Engineers, American Township, and US Utility Contractor Company. (Doc. No. 87).

**{¶15}** On November 24, 2008, Funk filed an answer to the first amended complaint and filed a counterclaim against the estate. (Doc. No. 93). That same day, Ottawa Oil filed an answer to the amended complaint as well. (Doc. No. 94). Thereafter, the remaining defendants filed answers to the amended complaint. (Doc. Nos. 95-96, 98-101, 103). On December 3, 2008, the estate filed its answer to Funk's counterclaim. (Doc. No. 97).

**{¶16}** A jury trial was scheduled for May 17, 2010 as the matter proceeded to discovery. (Doc. No. 113).

**{¶17}** On January 21, 2009, Acme Leasing filed a motion for summary judgment. (Doc. No. 112). On February 17, 2009, the estate filed a motion for extension of six (6) months to file its memorandum in opposition, which the trial court partially granted giving the estate until April 17, 2009 to respond. (Doc. Nos. 124, 133). That same day, the estate filed a Civ.R 41(A) dismissal of its claims against Eagle Traffic Control and Oldcastle, Inc. without prejudice. (Doc. No. 125-26).

**{¶18}** On April 10th, July 20th, and November 12th, of 2009, respectively, the estate filed Civ.R. 41(A) dismissals of its claims against Acme Leasing Co., Athens Technical Specialists, Inc., and Eberle Design, Inc. without prejudice. (Doc. Nos. 140, 194, 235). On July 21, 2009, the estate filed a Civ.R. 41(A) dismissal of count two and count six of its amended complaint against the Shelly Company. (Doc. No. 196).

6

{¶19} On November 18, 2009, the estate re-filed its civil complaint against US Utility in the Wood County Court of Common Pleas asserting two causes of action. In its first cause of action, the estate alleged that US Utility was negligent in programing, downloading software, and/or installing the traffic control device. (Wood County Complaint). In its second cause of action, the estate alleged that US Utility breached ODOT regulations and standards when it installed the traffic signal. (Id.). On December 2, 2009, US Utility filed a motion to dismiss or, in the alternative, to transfer venue to Allen County. On January 27, 2010, the Wood County Court of Common Pleas granted the motion to transfer the case to Allen County. On March 9, 2010, the Allen County Court of Common Pleas ordered that the case be consolidated with the case before it, *Heider v. Siemens, AG, et al.*, Case No. CV 2008-0812.

{¶20} On December 18, 2009, Allen County filed a motion for summary judgment. (Doc. No. 270). On January 4, 2010, the estate filed a motion for an extension to respond to the motion for summary judgment, which the trial court granted. (Doc. Nos. 277, 279). On January 14, 2010, Baldwin and Sours, Inc. filed a motion for summary judgment. (Doc. No. 284). On January 15, 2010, Ottawa Oil and Funk filed a motion for summary judgment. (Doc. No. 285).

{¶21} On February 22, 2010, the Estate filed a Civ.R. 41(A) dismissal of its claims against Allen County without prejudice. (Doc. No. 315). On February 23, 2010, the estate filed its memorandum in opposition to Ottawa Oil and Funk's

motion for summary judgment. (Doc. No. 317). On March 5, 2010, Ottawa Oil and Funk filed its reply in support of the motion for summary judgment. (Doc. No. 319).

{¶22} On March 4, 2010, Baldwin and Sours, Inc. filed a request for submission of its summary judgment motion. (Doc. No. 318). On March 8, 2010, the estate filed a Civ.R. 41(A) dismissal of its claims against Baldwin and Sours, Inc. without prejudice. (Doc. No. 320).

{¶23} On March 15, 2010, US Utility filed a motion for summary judgment. (Doc. No. 325). On March 25, 2010, the estate filed a Civ.R. 41(A) notice of dismissal of its claims against US Utility related to programing of the signal box and/or controller, downloading software into the controller, programming the controller, and/or negligence associated with any of these actions (Count One). (Doc. No. 329). On March 29, 2010, the estate filed its memorandum in opposition to US Utility's motion for summary judgment on the remaining claims. (Doc. No. 330).

{¶24} On March 30, 2010, the trial court granted Ottawa Oil and Funk's motion for summary judgment. (Doc. No. 331). The trial court also ruled in favor of Funk on his counterclaim for damages; however, the trial court never determined the amount of Funk's damages. (Id.). On April 22, 2010, the estate filed a notice of appeal from the trial court's grant of summary judgment in favor of Ottawa Oil and Funk. (Doc. No. 337). This case was assigned appellate case

no. 1-10-30 but was ultimately dismissed for lack of a final appealable order on May 21, 2010. (Doc. No. 348).

{¶25} On May 5, 2010, the trial court granted US Utility's motion for summary judgment. (Doc. No. 344). On May 13, 2010, the estate filed a notice of appeal. (Doc. No. 345). This case was assigned appellate case no. 1-10-37 but was also dismissed for lack of a final appealable order on June 3, 2010. (Doc. No. 350).

{¶26} On September 7, 2010, the trial court held a hearing to determine the amount of Funk's damages for the injuries he sustained as a result of the accident. (Doc. No. 360). After hearing the evidence, the trial court granted judgment in favor of Funk in the amount of $122,301.52. (Id.). On September 16, 2010, the trial court stayed execution of the judgment pending appeal. (Doc. No. 361).

{¶27} On October 4, 2010, the estate filed its notice of appeal. (Doc. No. 362). The estate now appeals raising three assignments of error.[1] For clarity of analysis, we elect to combine the estate's first and second assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**WHETHER THE TRIAL COURT ERRED WHEN EVIDENCE OF A DEFECTIVE TRAFFIC SIGNAL LIGHT AND EVIDENCE OF CAUSE OF DEFECT WAS TAKEN FROM THE TRIER OF FACT.**

---

[1] The Estate raises three "Issues for Review" on appeal. Although appellants were required to set forth "Assignments of Error" by App.R. 16(A)(3) and this Court has discretion to disregard appellants' arguments under App.R. 12(A)(2), we will, in the interests of justice, analyze the three "Issues for Review" as assignments of error.

9

**ASSIGNMENT OF ERROR NO. II**

**WHETHER THE TRIAL COURT ERRED WHEN IT IGNORED THE EVIDENCE THAT WAS PRESENTED SHOWING THAT TRUCK DRIVER FUNK BREACHED HIS DUTY OWED TO DR. HEIDER WHEN FUNK FAILED TO EXERCISE ORDINARY CARE AT THE INTERSECTION.**

{¶28} In its first assignment of error, the estate argues that circumstantial evidence of the traffic light's malfunctions in the weeks and months leading up to the accident creates a question of fact as to whether the traffic light malfunctioned on the date of the accident. In addition, the estate argues that there is a question of fact concerning whether the improper grounding of the traffic signal box could have caused the types of signal problems that were reported.

{¶29} In its second assignment of error, the estate argues that there is a question of fact as to whether the truck driver, Funk, breached his duty of ordinary care to yield to Dr. Heider who may have been clearing the intersection as Funk was entering the intersection. The estate further argues that there is a disputed question of fact concerning whether or not Dr. Heider entered the intersection on a red light.

{¶30} This Court reviews a grant or denial of summary judgment pursuant to Civ.R. 56(C) de novo. *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 127, 752 N.E.2d 962, citing *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. To prevail under Civ.R. 56(C), a party must show: (1) there are no

10

genuine issues of material fact; (2) it appears from the evidence that reasonable minds can reach but one conclusion when viewing evidence in the nonmoving party's favor, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Shaffer*, 90 Ohio St.3d at 390; *Grafton*, 77 Ohio St.3d at 105.

{¶31} "'To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death.'" *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶14, quoting *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449.

{¶32} The estate first argues that questions of fact exist concerning whether the traffic light malfunctioned and whether Dr. Heider ran the red light. We disagree. Although several individuals came forward after the accident with accounts of how the traffic light at the intersection allegedly malfunctioned, none of these individuals actually witnessed the accident. (Defendants' Funk and Ottawa Oil MSJ, Doc. No. 285, Ex. D). Additionally, every available accident witness testified that Dr. Heider entered the intersection on a red light.

{¶33} Ronald Funk testified that, around 8:30 p.m. on November 14, 2006, he was operating a tractor tanker-trailer around forty to forty-five (40-45) miles

11

per hour westbound on Allentown Road when Dr. Heider, traveling southbound on Eastown Road, ran a red light causing their vehicles to collide. (Funk Depo. at 17, 140, 153). Funk testified that it was a clear night on November 14, 2006. (Id. at 151). According to Funk, the traffic light controlling his westbound lane of travel was green when he was about one-half (1/2) of a mile before the intersection on Allentown Road. (Id. at 64). Funk testified that the traffic light controlling westbound traffic on Allentown Road was continuously green, and the light controlling southbound traffic on Eastown Road was continuously red prior to the accident. (Id. at 61, 63, 146, 152, 162). Funk testified that he engaged his brakes as soon as he realized that Dr. Heider was going to run the red light, but that he ended up squarely hitting Dr. Heider's vehicle, in the intersection. (Id. at 72, 75). Funk testified repeatedly that Dr. Heider ran the red light causing the accident. (Id. at 17, 55, 61, 72, 91). Funk also testified that he performed a pre-trip inspection of his tractor tanker-trailer, and he did not discover any problems with the brakes. (Id. at 134). Funk further testified that he did not lose control of his vehicle until impact. (Id. at 103). Funk, who traveled through this intersection weekly, also testified that he never witnessed the traffic light malfunction, and that the traffic light appeared to be operating properly the night of the accident. (Id. at 139, 147, 149).

{¶34} Bryan McClure testified that he was traveling forty-five to fifty (45-50) miles per hour southbound on Eastown Road approximately one-tenth (1/10)

of a mile behind Dr. Heider's vehicle the night of the accident. (McClure Depo. at 13, 19, 29). McClure testified that Dr. Heider's vehicle was the only vehicle in front of him that night, and that he saw at least one vehicle heading northbound on Eastown Road that night. (Id. at 32). McClure testified that the light controlling southbound Eastown Road traffic changed from green to yellow when Dr. Heider was on Eastown Road where the road widens for a turn lane past Musser Drive. (Id. at 22-24). McClure testified that he began to decelerate when the light changed to yellow, but that Dr. Heider's vehicle continued at the same speed. (Id. at 20). McClure testified that Dr. Heider's vehicle was before the stop bar when the light changed from yellow to red, and that Dr. Heider "flat out ran * * * a red light and got hit." (Id. at 36, 47). McClure testified that the light controlling the tractor trailer-tanker's lane of travel was green when the accident occurred. (Id. at 87). McClure testified that: the light did not abruptly change colors nor was it flashing green for both Eastown and Allentown Roads; there was plenty of time to stop for the red light; and he could have stopped for the red light even if he was in front of Dr. Heider's vehicle. (Id. at 29-30, 78, 85). Dr. Heider's vehicle never braked or slowed down prior to the accident, according to McClure. (Id. at 63). McClure testified that the tractor tanker-trailer was traveling around thirty-five to forty (35-40) miles per hour through the intersection, even though the tractor tanker-trailer driver hit his brakes prior to the accident. (Id. at 35, 40-41). McClure denied consuming any alcohol the night of the accident, and testified that

13

his testimony concerning the accident has consistently been that Dr. Heider ran the red light. (Id. at 94, 98).

{¶35} Brittney Gordon testified that she was traveling northbound on Eastown Road the night of the accident, and that the light controlling her lane of traffic was red as she approached the intersection. (Brittney Gordon Depo. At 18, 35). She testified that no other cars were in front of her when she stopped for the red light. (Id. at 16). She further testified that she saw the tractor tanker-trailer come through the intersection traveling west toward Allentown while the light for northbound traffic on Eastown Road was still red. (Id. at 20). Concerning the accident, Brittney testified that she heard squealing tires, a loud hit, saw an explosion, and heard people screaming. (Id. at 28, 43). She further testified that the light controlling eastbound Allentown Road traffic was green at the time of the accident, and the traffic light appeared to be functioning correctly. (Id. at 32, 73).

{¶36} Bethany Gordon, no relation to Brittney Gordon, testified that she was traveling westbound on Allentown Road behind the tractor tanker-trailer about two or three car lengths on the night of the accident. (Bethany Gordon Depo. at 11, 14-15, 43). The tractor tanker-trailer slowed down and moved into the turning lane as it approached the intersection, according to Bethany. (Id. at 16-17). Bethany testified that the light for westbound Allentown Road traffic was green and never changed. (Id. at 16). She also testified that cars were stopped for both northbound and southbound Eastown Road lanes of travel, and cars were stopped

14

for the eastbound Allentown Road lanes of travel to allow the tractor tanker-trailer to turn onto Eastown Road. (Id. at 19-22). Bethany later testified that it was possible that the tractor tanker-trailer was not turning left onto Eastown Road but attempting to avoid the accident. (Id. at 40). Bethany testified that the traffic light appeared to be functioning normally, and she has travelled through the intersection many times and has never seen the light malfunction. (Id. at 43, 45, 46-48). Bethany further testified that the traffic light controlling westbound Allentown Road traffic was green from shortly after she passed the Tom Ahl car dealership on Allentown Road and was never red prior to the accident. (Id. at 57, 68).

{¶37} Katrina "Chris" Estes testified that she was traveling westbound on Allentown Road the night of the accident about three or four car lengths ahead of the tractor tanker-trailer. (Estes Depo. at 11, 18). Estes testified that she was slowing down for the light when it turned green, but that she cleared the intersection on a green light going forty to forty-five (40-45) miles per hour. (Id. at 18-21). Estes testified that, after she cleared the intersection, she saw flames in her rearview mirror and stopped her car to see the accident. (Id. at 21-22). Estes testified that the light changed from red to green normally, and that she passes through this intersection five to ten (5-10) times per week and has never noticed any light malfunctions. (Id. at 34-35, 56).

{¶38} The testimony of alleged prior light malfunctions offered by the estate is irrelevant for purposes of showing a traffic light malfunction *on the night*

15

*of the accident.* See *Pottorf v. Bray*, 3d Dist. No. 17-03-09, 2003-Ohio-4255, ¶4 (upholding trial court's decision to exclude as irrelevant testimony concerning observations of a traffic signal's timing sequence on days other than the day of the accident). *Krause v. Spartan Stores, Inc.*, 158 Ohio App.3d 304, 2004-Ohio-4365, 815 N.E.2d 696, ¶34 (evidence of prior parking light outages irrelevant to show parking lot lighting was deficient on the night of the criminal activity); *Moore v. Habegger* (Feb 16, 2001), 6th Dist. No. L-00-1248, at *4 (evidence of prior parking lot light malfunctions was irrelevant as it related to the night of the criminal activity). This is especially true here where all the direct evidence demonstrates that the traffic light *was* functioning correctly on the night of the accident. In fact, the record demonstrates that the traffic signal passed all three hundred and forty-eight (348) systems tests both prior to the accident (March 15, 2005 and March 9, 2006) and two (2) days after the accident (Nov. 16, 2006). (Stechschulte Depo. at 74-75); (Collision Reconstruction Report, Stechschulte Ex. D); (Stump Depo. at 43, 50, 54, 184); (Sybert Depo. at 46, 50-51, 61). These systems tests included tests on the conflict monitor. (Stechschulte Ex. D). The conflict monitor causes the traffic lights to flash red for opposite directions of traffic if the traffic signals mistakenly display green lights for opposite directions of traffic (conflicting green lights) or if the traffic signal(s) mistakenly bypasses a yellow light (green to red light) in its sequence. (Sybert Depo. at 50-51). Deputy Stechschulte also concluded that the traffic control device was operating properly

16

on the night of the accident, and that there was no evidence of a malfunction. (Stechschulte Depo. at 74-76).

{¶39} After reviewing the record herein, we cannot conclude that a material issue of fact exists with regard to whether or not the traffic signal malfunctioned or whether or not Dr. Heider ran the red light on the night of the accident.

{¶40} The estate next argues that a material issue of fact exists concerning whether or not unsatisfactory grounding of the traffic signal could have caused the traffic signal to malfunction on the night of the accident. This argument lacks merit for several reasons. As we have already noted, the record is devoid of any evidence of a traffic signal malfunction. Aside from that, the record lacks evidence that the traffic signal was improperly grounded. The estate points to an ODOT report noting that the grounding of the traffic signal was "unsatisfactory." However, Chris Holmes, an ODOT signal electrician, testified that the report's notation of "unsatisfactory" means that the ground was not tested. (Holmes Depo. at 11-12, 65-66). Holmes further explained that the contractor who installs the signal cabinet tests for proper grounding of the cabinet. (Id. at 68). John Patrick, ODOT's project manager for the intersection, testified that he was present when US Utility tested the signal cabinet's grounding, and the signal cabinet passed the grounding test. (Patrick Depo. at 112-13). Even the estate's expert witness, Vernon Tekell, admitted that the ODOT report's conclusion of an "unsatisfactory" ground was contradictory, because the report also noted a ground measurement of

17

zero OHMs, which would have been a perfect ground. (Tekell Depo. at 129-31). Furthermore, even assuming that the signal was improperly grounded, Tekell could not testify that the unsatisfactory grounding caused the accident but only that unsatisfactory grounding *could* cause intermittent problems, such as flickering of the signal light. (Tekell Depo. at 93, 190). Notably, Tekell admitted that the conflict monitor would still work properly despite unsatisfactory grounding, and that he was not testifying that there were conflicting green lights in this case. (Id. at 94, 170).

{¶41} Under these circumstances, we cannot conclude that a material issue of fact remains as to whether the traffic signal cabinet was improperly grounded and, more importantly, whether the improper grounding caused the accident.

{¶42} The estate next argues that a material issue of fact exists as to whether Funk violated a duty of ordinary care to yield to Dr. Heider who *may* have been lawfully in the intersection at the time of the accident. Specifically, the estate argues that McClure testified that Funk timed the red light so he could maintain speed and entered the intersection just as the light turned green. This argument lacks merit as well. As an initial matter, the estate's assumption that Dr. Heider *may* have entered the intersection lawfully is not supported by the record. Every available eyewitness testified that Dr. Heider entered the intersection on a red light, so he was not lawfully in the intersection at the time of the accident. R.C. 4511.13(C)(1). Furthermore, the estate mischaracterizes McClure's testimony.

18

McClure did not testify that Funk *was* timing the red light only that Funk "could have been," because *he* (McClure) would have been timing the light under the circumstances. (McClure Depo. at 85-86). Additionally, the estate's assumption that Funk was entering the intersection just as his light turned green is not supported by the evidence. Estes, not Funk, was the first person that entered the intersection after the light turned green. (Estes Depo. at 11). Estes testified that she was three to four (3-4) car lengths ahead of Funk and passed through the intersection going forty to forty-five (40-45) miles per hour. (Estes Depo. at 18-21). Funk estimated that the light was green while he was still one-half mile (1/2 mi.) east of the intersection. (Funk Depo. at 64). Therefore, we find no material issue of fact remaining on this issue.

{¶43} Finally, the estate argues that, *assuming* the traffic light malfunctioned, Funk owed Dr. Heider a duty of ordinary care, citing *Welch v. Canton City Lines* (1943), 142 Ohio St. 166, 50 N.E.2d 343. This argument also lacks merit. The facts of this case are distinguishable from *Welch*, supra. The traffic light in *Welch* was working for one direction of travel but not working at all for the other direction of travel. 142 Ohio St. at 168. As a result, one motorist entered the intersection on a green light, while the other motorist entered the intersection without any light being illuminated. Id. Under these facts, the Court concluded that each vehicle was lawfully in the intersection; and therefore, each had equal rights, and the driver of each was bound to exercise ordinary care. Id. at

The traffic light in this case, however, was working for both directions of traffic, and, furthermore, the record indicates that the light was functioning properly at the time of the accident. As such, *Welch* is inapplicable. Aside from that, the record contains evidence demonstrating that Funk exercised reasonable care to avoid the accident by taking evasive action in the form of hard braking as soon as he realized that Dr. Heider was not stopping for the red light. (Funk Depo. at 72); (Stechschulte Depo. at 40-41, 44); (McClure Depo. at 35). (Bethany Gordon Depo. at 17). Therefore, we find no issues of material fact remain on this issue either.

{¶44} For all these reasons, the estate's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR NO. III

**WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT DEFENDANTS RONALD FUNK AND OTTAWA OIL WERE ONLY SUSCEPTIBLE OF NEGLIGENT MAINTENANCE IF DEFENDANTS KNEW OR HAD REASON TO KNOW OF THE UNDERLYING DEFECT IN THE TRACTOR TANKER TRUCK.**

{¶45} In its third and final assignment of error, the estate argues that the trial court erred by relying upon *Bloomer v. Van Kow Enterprises* (May 5, 1994), 8th Dist. No. 64970 to conclude that its negligent maintenance claim failed as a matter of law because *Bloomer* was a products liability case. The estate further argues that evidence of defective maintenance goes to Funk's ability to control the vehicle upon the roadway as required under R.C. 4511.20.2. The estate finally

20

argues that defendants Funk and Ottawa Oil may be negligent per se under R.C. 4513.20(A)(9)[2] for failing to adjust the brakes so as to operate as equally as practicable with respect to the wheels on the opposite sides of the vehicle.

{¶46} The estate's arguments lack merit. As an initial matter, the estate never raised the defendants' failure to comply with R.C. 4511.20.2 or 4513.20(A)(9)[3] in their response to defendants' motion for summary judgment. (Doc. No. 317). As such, the estate cannot raise the issue for the first time on appeal. See *Hood v. Rose*, 153 Ohio App.3d 199, 2003-Ohio-3268, 792 N.E.2d 736, ¶10.

{¶47} Furthermore, the trial court's reliance upon *Bloomer*, supra, was not erroneous as the estate argues. *Bloomer* involved multiple claims against multiple defendants arising from an accident where a Van Kow employee was injured when the truck he was servicing rolled off of the lift ramps dragging him one hundred (100) feet. 8th Dist. No. 64790, at *1. Although the plaintiff did assert product liability claims against the defendants, he also asserted a claim of negligent maintenance against Jartran Enterprises, the owner of the truck, for failing to maintain the truck's emergency brake system. Id. The Court of Appeals found that plaintiff's negligent maintenance claim failed, however, because "there [was] no evidence that Jartran deviated from the regular maintenance schedules for the vehicle or that Jartran knew of any facts which would make it reasonable to

---

[2] R.C. 4513.20(A)(10), not R.C. 4513.20(A)(9) is the applicable section governing the equal braking requirement.
[3] Id.

21

specifically check the emergency brake system when not otherwise instructed to do so by regular maintenance recommendations." Id. at *3. Like the Court in *Bloomer*, the trial court here determined that the estate's negligent maintenance claim failed because there was no question as to whether the defendants were aware or should have been aware of the alleged brake defects. (Mar. 20, 2010 JE, Doc. No. 331). Therefore, the trial court's reliance upon *Bloomer* in this case was not erroneous as the estate argues.

{¶48} The estate's third assignment of error is, therefore, overruled.

{¶49} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J., and SHAW, J., concur.**

**/jnc**